**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 2:23-cr-66 |
| v. | ) | |
| | ) | |
| ROMAN GRIFFEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM ORDER</u>**

A federal grand jury indicted Defendant Roman Griffey for (1) possession with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi), and 841(b)(1)(C); (2) unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  ECF 1.  Pending before the Court is Mr. Griffey's motion to suppress physical evidence that police officers seized from his rental car pursuant to a search warrant that was issued on July 25, 2022.  This search warrant was based on an investigatory stop that officers initiated the night prior for a suspected DUI offense at the Pittsburgh International Airport, which also resulted in Mr. Griffey's arrest.  Mr. Griffey argues that he was unlawfully seized at the airport without reasonable suspicion, that the later affidavit in support of the search warrant included material omissions and misstatements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and that the search warrant was overbroad.  As such, he now moves to suppress the evidence that was seized from the vehicle, which included the controlled substances and firearm at issue.  ECF 46.

After carefully reviewing the relevant facts, legal authorities, the parties' briefs, and the testimony and exhibits adduced at the suppression hearing, the Court will deny the motion.

## BACKGROUND

The Court makes the following factual findings based on the testimony and evidence introduced at the October 15, 2024, suppression hearing.

On the evening of July 24, 2022, Allegheny County Police Department Officer Bryan Allen was on patrol at the Pittsburgh International Airport when he observed an unattended vehicle parked outside the pick-up area of the airport, in an area with several "no parking" signs and signs indicating commercial vehicle traffic only. ECF 68, 14:10-15:1. As Officer Allen looked into the car, he saw an open container of alcohol on the rear passenger floor, marijuana "shake" (*i.e.*, loose pieces of the dried cannabis) in the center console and the driver's seat floor, and a medical marijuana container near the gear shift. *Id.* at 16:11-17:12. Officer Allen communicated over the police radio, including his belief that the driver was a male with a young child that he had just seen entering the airport, to try to identify the driver and get the driver to return to the car. *Id.* at 19:1-17. Over the radio, Officer Rich Varner gave a description of the individual believed to be the driver of the vehicle, based on the CCTV footage. *Id.* at 19:22-25.

Based on the description of the driver, Officer Matthew Williamson—who had been alerted about the illegally parked car and was assisting Officer Allen with locating the driver—found Mr. Griffey with his son in the baggage claim area. *Id.* at 85:25-86:4; 95:7-21. As he approached Mr. Griffey, he asked Mr. Griffey if that was his car out there. Ex. C, 00:37-00:40. Mr. Griffey replied affirmatively, and so Officer Williamson asked him to move his car. Mr. Griffey refused at first, saying "I'll be back," to which Officer Williamson replied, "No, you're coming now." *Id.* at 00:44-00:46. Mr. Griffey then told Officer Williamson to "call for help," and Officer Williamson relayed over the police radio that Mr. Griffey didn't want to go move his car. *Id.* at 00:49-01:04. Mr. Griffey replied, "I didn't say that" and began to record the encounter to "give to [his] lawyer." *Id.* at 01:04-01:12. Officer Williamson asked

him again to move his car.  ECF 68, 87:21-24.  Mr. Griffey began to walk in the direction of the airport exit, with Officer Williamson behind him.

Meanwhile, outside the airport, Officer Allen was waiting by the unattended vehicle for Mr. Griffey to come out when Sergeant Chris McHenry approached him. Officer Allen asked Sergeant McHenry if they could seize the open container of alcohol, and Sergeant McHenry responded affirmatively, based on his observation that it was unlawful to have an open bottle of alcohol in a regular (non-limo) vehicle. Ex. B, 3:50-4:00.  Shortly after, Officer Stiffey approached Officer Allen and informed Officer Allen that he had previously seen the car weaving in and out of traffic as it was approaching the airport, nearly causing an accident; but Officer Allen thought that Officer Stiffey might have been talking about a different car, *e.g.*, the one parked behind Mr. Griffey's.  ECF 68, 22:2-5, 61:9-62:7.  Another officer remarked that Mr. Griffey was seen on CCTV "dancing" in the airport.  *Id*. at 44:11-13.

Back inside the airport terminal, Mr. Griffey and Officer Williamson had reached the exit (but before walking through the double doors to the outside curb), when Mr. Griffey turned around and asked Officer Williamson to walk him to his car, claiming he didn't know where it was.  Ex. C, 02:39-02:46.  At this point, Officer Allen, Sergeant McHenry, and Sergeant Michael Kuma approached Mr. Griffey, as well, and the officers and Mr. Griffey all walked through the double doors to the curbside, with Mr. Griffey in front.

At the curbside, Mr. Griffey again asked the officers to take him to his car. After Officer Allen asked him where his car was, Mr. Griffey approached Officer Allen closely, prompting Officer Allen to tell him to step back while motioning with both of his hands.  ECF 68, 24:6-14.  Officer Allen smelled alcohol on Mr. Griffey's breath as he got close.  *Id*. at 24:15-18.  Officer Allen again asked Mr. Griffey where his car was, and Mr. Griffey came even closer to Officer Allen this time, while saying "My name is Griffey," prompting Officer Allen to again tell him to back off.  *Id*. at 25:9-20; Ex.

C, 03:35-03:41.  Mr. Griffey said to him, "If you get aggressive, I don't care about your badge."  *Id.* at 03:42-03:45.  After Mr. Griffey took several steps towards his car, he turned towards Officer Allen and got very close again, saying, "Stop that, my son's right here bro, do it again and I'll—."  ECF 68, 26:7-16; Ex. B, 07:08-07:10.  This time, Officer Allen took him to the ground and placed him in handcuffs.  ECF 68, 26:2-3.

The officers then searched Mr. Griffey.  Officer Allen, believing Mr. Griffey to be under the influence of alcohol, asked him if he consented to field sobriety tests— to which he said no.  Ex. B, 10:33-10:49.  He was transported to the police station, where he also declined Officer Allen's request for a blood test.  ECF 68, 29:9-12.  The vehicle was towed to the Allegheny County Police Department impound lot.  ECF 68, 29:5-15.  A search warrant was issued for the car, based on a probable-cause affidavit from Officer Allen charging Mr. Griffey for illegal parking, two DUIs, disorderly conduct, public drunkenness, endangering the welfare of a child, and resisting arrest.  ECF 46-2.  When officers executed the search warrant, they found a firearm, drugs, and cell phones, which form the basis of the charges in the indictment.  ECF 46, p. 5.

## DISCUSSION & ANALYSIS

Mr. Griffey offers three grounds for suppression.  First, he argues that he was unlawfully seized when Officer Williamson ordered him while inside the airport near the baggage claim area to return to his car.  ECF 46, p. 6.  He claims that this was a seizure because it required Mr. Griffey to submit to the officer's authority, but that the officer lacked reasonable suspicion of any criminal activity at that time.  Second, he argues that the affidavit for the search warrant misstates and omits material facts, and taking into account those misstatements and omissions, there was no probable cause to support the warrant.  *Id.*  Third, he argues that the search warrant was overbroad.  *Id.* at 20.  The Court disagrees, and addresses each argument, in turn.

**I.    The officers had reasonable suspicion to initiate a *Terry* stop.**

The parties dispute when the officers seized Mr. Griffey.  Mr. Griffey argues that he was seized when Officer Williamson ordered him, while inside the airport near the baggage claim area, to return to his car, commanding, "No, you're coming now[,]" to which he complied.  ECF 71, p. 4.  The government says that Mr. Griffey wasn't seized until the additional officers approached him several minutes later at the doors of the airport.  ECF 72, p. 3.  The Court agrees with Mr. Griffey on this point.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV.  But an officer may conduct a brief, investigatory stop, *e.g.*, a *Terry* stop, "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  The first step in the analysis is to determine when the officers seized Mr. Griffey.  *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009).

"[A] seizure requires either physical force or, where that is absent, submission to the assertion of authority." *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009) (cleaned up).  "When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," the test for whether a seizure occurred in response to authority is "if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave[.]" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (cleaned up); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (examples of circumstances that might indicate a seizure are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled").

Here, Mr. Griffey was seized during his encounter with Officer Williamson in the baggage claim area, when he complied with Officer Williamson's request to go move his car. Mr. Griffey was at first resistant to Officer Williamson's request, so Officer Williamson relayed over the radio that Mr. Griffey didn't want to go move his car. Ex. C, 00:49-01:04. Mr. Griffey replied, "I didn't say that." *Id.* at 01:04-01:12. By the time Mr. Griffey started walking towards his car, Officer Williamson had asked him to go move his car several (four, by the Court's count) times. Based on Officer Williamson's tone of voice, his communication with the other officers over the police radio (in Mr. Griffey's presence), and his repeated requests despite Mr. Johnson's indication that he didn't want to move his car at that moment, a reasonable person in Mr. Griffey's shoes would have believed that he "would not be left alone until he complied" with Officer Williamson's order. *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (encounter turned into seizure when officer persisted rather than accepting defendant's choice to not  acquiesce with officer's initial request to roll down the window—at that moment, officer made it clear that defendant "was not free to ignore him and would not be left alone until he complied"); *United States v. Coggins*, 986 F.2d 651, 654 (3d Cir. 1993) (the combination of defendant's expressed desire to leave, officer's order that he stay, and defendant's yielding to police authority resulted in a seizure, even though defendant fled soon after).

The next question, then, is whether there was reasonable suspicion to justify the seizure. Mr. Griffey argues that an illegally parked car doesn't justify a *Terry* stop, citing two cases from the Ohio Court of Appeals, and that officers "should have issued Mr. Griffey a citation for the traffic offense and continued with their duties." ECF 71, p. 11. The Court disagrees.

The parking violation was a violation of the Pennsylvania Vehicle Code, 75 Pa. Cons. Stat. Ann. § 3353(a)(3)(ii), so Officer Williamson had reasonable suspicion to initiate a *Terry* stop after he identified Mr. Griffey as the driver of the illegally parked

vehicle. *United States v. Taylor*, No. 20-443, 2022 WL 3030524, at *6 (E.D. Pa. July 29, 2022) (even a technical violation of a traffic code justifies a *Terry* stop). In *Whren v. United States*, the Supreme Court found that a traffic stop was reasonable where the officers had probable cause to believe that a civil traffic violation had occurred. 517 U.S. 806, 810, 819 (1996); *see also United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006) (traffic stop is a reasonable seizure if "officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop"). This means that a parking violation—even if it's a summary offense like the one for which Mr. Griffey was ultimately charged—can justify an investigatory stop.[1] *See United States v. Choudhry*, 461 F.3d 1097, 1101 (9th Cir. 2006) (civil parking violation justified investigatory stop of car, consistent with decisions of Fifth, Sixth, and Seventh Circuits); *United States v. Wallace*, No. 09-534, 2009 WL 10677900, at *1 n.1 (E.D. Pa. Nov. 20, 2009) (collecting cases).

Though Mr. Griffey argues that Officer Williamson could have just issued a citation and moved on, it was within his authority to ask Mr. Griffey to move his car instead.[2] As Officers Allen and Williamson credibly testified, unattended vehicles

---

[1] Mr. Griffey cites to two cases from the Court of Appeals of Ohio that held that a civil parking violation did not justify an investigatory stop, and so the officer's actions should have been limited to issuing a parking citation. ECF 71, p. 11 (citing *State v. Medlar*, 638 N.E.2d 1105 (Ohio Ct. App. 1994) and *State v. Owens*, No. 03AP–423, 2004 WL 2804633 (Ohio Ct. App. Sept. 28, 2004)). But *Medlar* was pre-*Whren*, and *Owens* does not grapple with the Supreme Court's decision in *Whren*, which also involved a civil traffic violation. *See State v. Warren*, 955 N.W.2d 848, 861 (Iowa 2021) (citing *Medlar* as an "outlier[] in the national caselaw" on the issue of whether parking violations constitute probable cause or reasonable suspicion for an investigatory stop).

[2] Notably, Chapter 705 Part 3 Article IX of the Allegheny County Code of Ordinances, regulating vehicles at the Pittsburgh International Airport, authorizes the Allegheny County Police to "tow or otherwise move motor vehicles which are parked or stopped on the airport in violation of signs posted by the Department of Aviation"—and "[n]o person shall disregard or fail to comply with any directions of a police officer indicated by gesture, signal or otherwise, or disregard or fail to comply with any directions on

around the airport pose safety concerns, and rather than towing vehicles, it is generally faster and less inconvenient to find the driver and ask him or her to move the car.  ECF 68, 11:23-12:6, 22:9-18, 84:8-21.

Neither was the investigatory stop unreasonable in duration.  In the context of a traffic stop, a seizure becomes unlawful "if it is prolonged beyond the time reasonably required to complete the mission."  *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022) (cleaned up) (quoting *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015)).  "[A]n unreasonable extension occurs when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes."  *Hurtt*, 31 F.4th at 159 (cleaned up); *see also United States v. Simmons*, No. 22-175, 2023 WL 157992, at *4 (M.D. Pa. Jan. 11, 2023) (a "court must consider the 'mission' of the traffic stop and any related safety concerns or incidental activities when evaluating whether officers took an unreasonable amount of time to complete it").

Officer Williamson seized Mr. Griffey in baggage claim, and then walked with him out of the airport, towards his car.  All of this was in furtherance of the original mission of the stop, and lasted only a few minutes.  As noted above, the stop went a bit sideways when other officers met them near and then outside of the airport door and Mr. Griffey became aggressive—but, at that time, the officers had developed probable cause to arrest Mr. Griffey for DUI.

That is, during the course of Mr. Griffey's interaction with the officers outside the doors of the airport, the officers accumulated probable cause to believe that Mr. Griffey drove under the influence.  Officer Allen credibly testified that he noticed the smell of alcohol from Mr. Griffey's breath and person when Mr. Griffey approached

---

traffic signs and traffic signal control lights." §§ 705-55, 705-58.  Mr. Griffey's suggestion that Officer Williamson should have just issued a citation "conflates what [Officer Williamson] *could* have done and what he *should* have done." *Warren*, 955 N.W.2d at 861 (emphasis original).

him closely.[3]  ECF 68, 24:15-18.  Officer Allen also observed Mr. Griffey's lack of appropriate responses to his questions and Mr. Griffey's "aggressive behavior and [] his apologetic behavior after the fact."  *Id*. at 25:9-13, 28:5-8.  Officer Williamson also testified that he observed Mr. Griffey's aggressive behavior with Officer Allen—which was "unusual" behavior for someone who was asked to move his car—and that he smelled alcohol on Mr. Griffey after he had physical contact with him.  *Id*. at 90:13-91:14.

The Court's review of the bodycam footage corroborates the officers' characterization of Mr. Griffey's mannerism during the encounter, particularly the threats and remarks he made as he repeatedly stepped close to Officer Allen despite Officer Allen's repeated commands to step back (*i.e.*, "My name is Griffey" "If you get aggressive, I don't care about your badge" "Stop that, my son's right here bro, do it again and I'll—").

The officers' observations of Mr. Griffey's aggressive and confrontational behavior, lack of cooperation, and smell of alcohol were in addition to several other factors that had already led them to reasonably suspect that Mr. Griffey drove under the influence: the open container of alcohol, marijuana shake, and medical marijuana container in the car; the illegally parked car; and CCTV footage of Mr. Griffey "dancing" in the airport.[4]  *See, e.g., Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa.

---

[3] Mr. Griffey argues that Officer Allen's testimony about smelling alcohol is unreliable, because (as corroborated by the bodycam footage) Officer Allen later asked his supervisor to smell the Gatorade bottle taken from Mr. Griffey because his "nose is all messed up" and he couldn't smell anything.  ECF 71, pp. 14-15; ECF 68, 57:16-58:3.  Officer Allen testified that his nose was clogged after the exertion of taking Mr. Griffey to the ground, which even caused his eyes to start watering.  ECF 68, 57:21-58:6.  The Court finds Officer Allen's testimony to be credible, especially because it is corroborated by Officer Williamson's testimony that he smelled alcohol on Mr. Griffey after he had physical contact with him outside the airport.  *Id*. at 103:24-104:4.

[4] Officer Allen also learned from Officer Stiffey that there was a car driving erratically, and weaving in and out of traffic as it was approaching the airport, but

Super. Ct. 2008) (probable cause for DUI existed where officer smelled alcohol, and driver slurred speech and became verbally combative); *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. Ct. 2008) (probable cause for DUI where officer detected odor of alcohol, slurred speech, and glassy eyes, and driver refused to submit to field sobriety tests); *Commonwealth v. Fedder*, No. 1233-2015, 2016 WL 1250206, at *5 (Pa. Super. Ct. Mar. 30, 2016) (probable cause for DUI where driver had glassy eyes, disheveled appearance, strong smell of alcohol, and there were containers of alcohol in car); *see also United States v. Ivey*, 307 F. App'x 941, 942-43 (6th Cir. 2009) (smell of alcohol emanating from driver's person provided requisite suspicion for *Terry* stop and justified driver's continued detention); *Miller v. Harget,* 458 F.3d 1251, 1259 (11th Cir. 2006) (smell of alcohol and erratic driving sufficient for reasonable suspicion of driving under the influence of alcohol, and driver's refusal to take a breathalyzer test gave rise to probable cause).

While the officers' "attention was initially, permissibly attracted by the illegally parked car[,]" their suspicion of a DUI offense "could then reasonably sharpen" based on their observations during the ensuing interaction with Mr. Griffey. *United States v. Hester*, 910 F.3d 78, 87-88 (3d Cir. 2018).  Taken together, Mr. Griffey's seizure comported with the Fourth Amendment.[5]

---

the Court will not credit this piece of information in the probable-cause determination because Officer Allen was not sure if Officer Stiffey was talking about Mr. Griffey's car or another car that was parked behind Mr. Griffey's.

[5] Because the Court finds that Mr. Griffey was not unlawfully seized, the Court need not address the government's alternative argument that the evidence recovered from the car would have inevitably been discovered from an inventory search after the illegally parked car was towed and impounded.

## II. The affidavit supporting the search warrant for the vehicle doesn't misstate or omit material facts.

Mr. Griffey also argues that the probable-cause affidavit supporting the search warrant for the vehicle contained four misstatements and one omission that, if corrected, would not establish probable cause. To warrant a *Franks* hearing,[6] "the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (cleaned up). "At the hearing, the defendant must ultimately prove by a preponderance of the evidence that: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." *Id.*

"[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know[.]" *Id.* (cleaned up). "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Id.*

The defendant must also show that "probable cause does not exist under the corrected affidavit," *e.g.*, after "excis[ing] the false statement from the affidavit" and "supplying the omitted information to the original affidavit." *Id.* at 383-84 (cleaned up). The probable-cause inquiry "is whether after considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place[,]" and "does not require absolute certainty that evidence of criminal activity will be uncovered, but only that it is reasonable to

---

[6] Whether to order a *Franks* hearing is somewhat of a moot point. At the suppression hearing, the Court gave Mr. Griffey ample leeway to explore these issues. ECF 68, 70:10-71:7.

assume that the requested search will lead to the discovery of the sought-after evidence." *United States v. Gordon*, 664 F. App'x 242, 245-46 (3d Cir. 2016) (cleaned up).

For the following reasons, the Court finds that Mr. Griffey has failed to carry his burden as to each of the alleged misstatements and omissions.

**Alleged Misstatement 1: Officer Allen detected the smell of alcohol on Mr. Griffey**. Mr. Griffey argues that this statement is false because Officer Allen never made any comments on camera that he smelled alcohol on Mr. Griffey, and couldn't have smelled alcohol because he is heard on camera asking his supervisor to smell the Gatorade bottle taken from Mr. Griffey because his "nose was all messed up" and he couldn't smell anything. ECF 71, pp. 14-15. But the fact that Officer Allen didn't make any comments on camera about the smell of alcohol does not mean that Officer Allen didn't smell alcohol.

As discussed above, the Court finds that Officer Allen credibly testified that his nose was clogged after the exertion of taking Mr. Griffey to the ground; Officer Allen's testimony about "notic[ing] the distinct and pungent odor of alcohol emanating from [Mr. Griffey's] breath and person" as Mr. Griffey got close to him is corroborated by Officer Williamson's testimony that he also smelled alcohol on Mr. Griffey, after he had physical contact with Mr. Griffey outside the airport. ECF 68, 24:15-18. Officer Allen's statement is further backed by other indicia that Mr. Griffey had consumed alcohol: the open container of alcohol in the car, Officer Allen telling Mr. Griffey that he believed he was under the influence of alcohol and requesting field sobriety tests after he was handcuffed, Officer Williamson opening and smelling the contents of the Gatorade bottle to see if it was alcohol (after having smelled alcohol on Mr. Griffey) (ECF 68, 91:1-10), and Officer Williamson telling Mr. Griffey's girlfriend that "he's definitely intoxicated." Ex. C, 10:19-10:49. The Court therefore

concludes that Mr. Griffey has failed to show that the statement was false and either made deliberately or with reckless disregard for the truth.

**Alleged Misstatement 2: Mr. Griffey "chest bumped" Officer Allen, who "pushed" Mr. Griffey away**.  Mr. Griffey argues that Mr. Griffey never chest bumped Officer Allen prior to being taken to the ground, and that Officer Allen never put his hands on Mr. Griffey's shoulders to push him away.  ECF 71, p. 15.  Officer Allen testified that, at the time he wrote in the affidavit that Mr. Griffey chest bumped him, he believed they did make contact.  ECF 68, 73:8-12.  But Officer Allen also testified that Mr. Griffey hadn't touched him before he told Mr. Griffey to back up for the second time or before he took Mr. Griffey to the ground, and that prior to arresting Mr. Griffey, he didn't touch Mr. Griffey.  *Id.* at 27:5-11; 49:14-16; 55:17-19.  From the video footage, it doesn't appear that Mr. Griffey and Officer Allen made any physical contact before Mr. Griffey was taken to the ground, although it is difficult to discern, so the Court will assume for purposes of this motion that Mr. Griffey didn't "chest bump" Officer Allen (and that Officer Allen didn't push Mr. Griffey away).  Ex. C, 03:42-03:52; Ex. B, 06:35-07:15; Ex. G, 01:10-01:39.

But even so, nothing in the record suggests that the statement was made deliberately or with reckless disregard for the truth.  Instead, this statement, at most, was made negligently or mistakenly—and reasonably so, given how quickly the events unfolded, *e.g.*, around 30 seconds from the first time that Officer Allen told Mr. Griffey to step back, to the moment that Officer Allen took him to the ground.  *See United States v. Ray*, 799 F. App'x 599, 606 (10th Cir. 2020) ("[T]he hasty nature of [the officer's] roadside conversation with [d]efendant suggests that [the officer's] original misstatement was accidental.").

The statement is also not that far off from what is captured on camera and in Officer Allen's testimony: Mr. Griffey repeatedly approached Officer Allen closely and "in an aggressive manner"—leading Officer Allen to believe that Mr. Griffey was

going to "strike" him.    ECF 68, 24:4-26:16, 51:10-12.  While Officer Allen didn't push Mr. Griffey away prior to arresting Mr. Griffey, he did motion for Mr. Griffey to step back, with both of his hands.  *Id.* at 24:9-14.  And immediately before Officer Allen took Mr. Griffey to the ground, the video footage shows that Mr. Griffey got so close that his chest almost touched Officer Allen.  It is the aggressive nature of the interaction, rather than the actual physical contact, that is material here.

Therefore, the statement is also not material to the probable-cause finding, because there are ample facts remaining in the affidavit to conclude that there is a fair probability that evidence of Mr. Griffey's DUI would be found in the car: (1) the medical marijuana prescription container and half-empty bottle of vodka in the car; (2) odor of alcohol from Mr. Griffey's breath and person; (3) Mr. Griffey approaching Officer Allen in an aggressive manner and being verbally combative; (4) his refusal to submit to field sobriety tests or blood test; and (5) his criminal history of charges and convictions involving controlled substances, endangering the welfare of children, and resisting arrest.  ECF 46-2.

**Alleged Misstatement 3: Mr. Griffey clenched his fist.**  Mr. Griffey argues it was impossible for him to have clenched his fist because, during the entire interaction, he was holding a cell phone in his left hand and a Gatorade bottle in his right hand, which had a cast covering his thumb and wrist.  ECF 71, p. 16.  Officer Allen testified that Mr. Griffey used his left hand "to push up the Gatorade bottle in his right hand" so that it was resting against his forearm and body, and then "create[d] a fist" which led him to believe that Mr. Griffey "was going to strike [him] at that time."  ECF 68, 77:18-78:12.  From the video footage, it's difficult to tell if Mr. Griffey was clenching his fist right before Officer Allen took him down.  Ex. B, 07:07-07:10.  But the video does appear to show Mr. Griffey shifting the items in his hands, which largely corroborates Officer Allen's testimony that he believed Mr. Griffey was going to strike him.  ECF 68, 26:7-13, 51:5-12.

Mr. Griffey's *Franks* challenge based on this alleged misstatement fails for the same reasons as stated above with regard to the "chest bump" statement. The "clenched fist" statement was, at most, made negligently, and is not material to the probable-cause finding because—as is clear elsewhere in the affidavit—Mr. Griffey approached Officer Allen aggressively, after having made several statements that Officer Allen reasonably perceived to be threats. ECF 68, 51:10-12. *See United States v. Smoot*, No. 22-160, 2023 WL 2298701, at *5 (S.D. Ohio Mar. 1, 2023) ("The descriptions [in the officer's testimony and in the search warrant affidavit] are not so different that they could not simply have been caused as a result of negligence." (cleaned up)).

**Alleged Omission 1: Officers knew Mr. Griffey had a medical marijuana card and there was no evidence of recent marijuana use**. Officer Allen was aware that there was a medical marijuana container in the car and can be heard on camera saying that Mr. Griffey "has a medical marijuana card." Ex. B, 13:18-14:11; ECF 68, 74:6-75:14. He also testified that he didn't observe any signs that Mr. Griffey had been smoking marijuana. ECF 68, 71:23-25.

Mr. Griffey argues that Officer Allen knew that Mr. Griffey had a lawful medical marijuana prescription at the time of his arrest, and chose not to include that in the affidavit because "it works against any suspicion of illegal narcotics." ECF 71, p. 18. He also argues that Officer Allen omitted the fact that he didn't suspect Mr. Griffey of using marijuana while driving, yet still charged him with driving under the influence of a controlled substance. *Id*. He claims both facts cut against probable cause of illegal narcotics in the car. The Court disagrees, for three reasons.

First, the fact that Officer Allen knew Mr. Griffey had a medical marijuana card isn't material to the probable-cause finding, because having a medical marijuana

card doesn't make it lawful to drive under the influence of alcohol or marijuana.  *See Commonwealth v. Stone*, 273 A.3d 1163, 1172 (Pa. Super. Ct. 2022).[7]

Second, this omission isn't material because the affidavit already includes Officer Allen's initial observation that there was a medical marijuana prescription container near the gear shift—and there isn't a meaningful difference between observing that Mr. Griffey had a medical marijuana card and that there was a medical marijuana prescription container in his car.  ECF 46-2.

Third, the fact that Officer Allen hadn't observed any signs that Mr. Griffey smoked marijuana (*e.g.*, Officer Allen didn't smell any marijuana on him (ECF 68, 27:15-16)) isn't material to the probable-cause finding, either.  Even if this omission was included in the corrected affidavit, there would still be a fair probability that additional evidence of DUI/impaired driving would be found in the car, based on the other facts in the affidavit that show Mr. Griffey to be impaired by either alcohol or drugs, including his erratic behavior, as well as the medical marijuana prescription container and half-empty bottle of vodka in the car.  *See Commonwealth v. Best*, 120 A.3d 329, 346 (Pa. Super. Ct. 2015) (probable cause to search car for further evidence of DUI where driver appeared to be under the influence of alcohol); *United States v. Harris*, 636 F. Supp. 3d 319, 322-23 (E.D.N.Y. 2022) (probable cause to conduct warrantless search of car existed where driver was sleeping behind the wheel in middle of active roadway and didn't respond to officers' questions, smelled like alcohol, and a vape pen and marijuana were in plain view in the car—these facts showed fair probability that officers would find evidence that driver was under

---

[7] Relatedly, Mr. Griffey hasn't shown that the omissions about the medical marijuana card and no signs of recent marijuana use were made deliberately or with reckless disregard for the truth.  Officer Allen credibly testified that he planned on seizing marijuana because he believed that Mr. Griffey may have been driving while using prescription marijuana; thus, whether or not the marijuana was prescribed would have been irrelevant.  ECF 68, 74:2-5.

influence of alcohol or drugs); *United States v. Piatt*, 576 F.2d 659, 660 (5th Cir. 1978) (reasonable for officer to conclude that driver might have consumed both alcohol and drugs where driver appeared intoxicated and there were prescription bottles in the front console); *United States v. Kinloch*, No. 420-082, 2021 WL 3698899, at *8 (S.D. Ga. July 27, 2021) (probable cause to search car for intoxicants, based on facts suggesting driver was under the influence of alcohol or some other intoxicant); *United States v. Hampton*, No. 17-00084, 2018 WL 340024, at *7 (D. Conn. Jan. 9, 2018) ("[T]he existence of at least a small quantity of marijuana within the vehicle...is a circumstance relevant to the probable cause determination [for driving while under the influence of marijuana]."); *United States v. Brown*, No. 20-277, 2021 WL 1617268, at *2 (W.D. Okla. Apr. 26, 2021) ("Given [officer's] observation of alcohol containers and marijuana inside the car, [d]efendant's implicit confirmation of the presence of marijuana in the car, and [officer's] reasonable impressions of impairment of and secretive behavior by [d]efendant, there was a fair probability that the car contained contraband or evidence." (cleaned up)).

**Alleged Misstatement 4: Officers were investigating "illegal narcotics."** In the last paragraph of the affidavit, Officer Allen requests a search warrant for, among other items, "illegal narcotics." ECF 46-2 ("Based on the above facts and circumstances, I respectfully request a vehicle search warrant be granted for...illegal narcotics, open containers of alcohol and rental agreement and other indicia of ownership."). Officer Allen testified that this was a "misstatement," and he was instead "referring to illegal use of narcotics while operating a vehicle." ECF 68, 76:11-14. Mr. Griffey argues that this misstatement was made, at least, recklessly. ECF 71, pp. 19-20.

The Court finds that this reference to "illegal narcotics," while a misstatement or partial omission, was not material. Indeed, the reference isn't even in a part of the affidavit that is attempting to establish probable cause. Rather, it is in the last

paragraph, which is simply a conclusory request for the warrant. Further, based on a common-sense reading of the affidavit as a whole, including the specific charges at issue, it is clear that the reference to "illegal narcotics" was meant to be tied to an alcohol or drug-based DUI, not to an investigation into drug distribution. Thus, the Court finds that any omission that would specifically tie the reference to "illegal narcotics" to the use of the vehicle in that specific sentence is immaterial. *See United States v. Hertel & Brown Physical & Aquatic Therapy*, No. 21-39, 2025 WL 83789, at *28 (W.D. Pa. Jan. 13, 2025) (Baxter, J.) (the probable-cause determination "involves a practical, commonsense decision" and "[a] reviewing magistrate judge must consider the supporting affidavit as a whole, read it in a common sense, nontechnical manner, and not simply consider statements in isolation.").[8]

### III. The search warrant, even if partially overbroad, is saved by the good-faith exception.

Mr. Griffey lastly argues that the search warrant was overbroad because there was no probable cause to search the car for illegal narcotics, *e.g.*, there is no nexus between the open container of alcohol/prescription marijuana container and evidence of "illegal drug trafficking." ECF 71, pp. 23-24.

"[A] warrant is overbroad when it permits the search and seizure of items for which there is no probable cause." *United States v. Bowers*, 548 F. Supp. 3d 504, 508 (W.D. Pa. 2021) (Ambrose, J.). "A reviewing court does not conduct a *de novo* determination of probable cause, but determines whether a substantial basis existed for the magistrate's finding of probable cause." *Id.* (cleaned up). This requires

---

[8] For largely the same reasons, the Court finds no evidence of recklessness or deliberateness. The lack of prominence of "illegal narcotics"—buried, as a passing reference, in the conclusory last part of the affidavit—is a strong indicator of a negligent error, rather than a reckless or deliberate disregard for the truth. *See United States v. Lopez*, No. 17-269, 2018 WL 1290415, at *10 (N.D. Ohio Mar. 13, 2018) (single, isolated false statement was an inadvertent or negligent error, based on its placement in the affidavit and the presence of the "corrected" statement elsewhere in the affidavit).

a "sufficient nexus between the evidence to be seized and the alleged offenses." *Yusuf*, 461 F.3d at 394 (cleaned up). "The starting point is that a magistrate judge may infer probable cause from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide evidence." *United States v. Stearn*, 597 F.3d 540, 558 (3d Cir. 2010) (cleaned up).

The search warrant identifies the following items to be searched for and seized: "Alcohol containers, marijuana, and related use and packaging items to include but not limited to scales, rolling papers, bagies [sic] and vaccum [sic] sealed bags. Any indicia or documents indicating ownership including rental paperwork." ECF 46-2, p. 1.

There is no question that there is a sufficient nexus between the suspected DUI and the first part of the first sentence of the warrant—"[a]lcohol containers, marijuana, and related use [items]." *Id.* Considering the nature of a DUI offense, the presence of the open container of alcohol (on the rear passenger floorboard) and prescription marijuana container (in the gear shift) in the car, and the deference to be given to the magistrate judge's probable-cause determination, the Court finds that a substantial basis existed for the magistrate judge to infer that any alcohol or marijuana seized from the car would be connected to whether Mr. Griffey had used intoxicating substances while driving. *Cf. United States v. Zamora*, No. 16-00316, 2017 WL 3186655, at *8 (D. Nev. June 16, 2017) ("It is illegal to operate a motor vehicle while impaired. Legally obtained substances, like alcohol and marijuana, may impair a driver. The odor of marijuana, like the odor of alcohol, may establish probable cause to search the vehicle for marijuana or alcohol." (internal citation omitted)).

What is arguably overbroad is the latter part of the first sentence of the warrant, which appears to specifically target distribution materials: "packaging

items to include but not limited to scales, rolling papers, bagies (sic) and vacuum sealed bags."  ECF 46-2, p. 1.  Something like "rolling papers" or "baggies" may be consistent with use, and so would be an appropriate target for a DUI-related search. But "scales" and "vacuum sealed bags" are clearly aimed at items used for drug distribution.

That said, even assuming that aspects of that list, such as "scales" and "vacuum sealed bags" are overbroad, *Leon*'s good-faith exception would, in any event, save the warrant.  Under *United States v. Leon*, 468 U.S. 897 (1984), "suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority."  *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 145 (3d Cir. 2002) (cleaned up).  There are four narrow situations where an officer's reliance on a warrant isn't reasonable: "(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized."  *United States v. Atwell*, 289 F. Supp. 2d 629, 638 (W.D. Pa. 2003) (McLaughlin, J.) (cleaned up).

None of these exceptions apply here.  As discussed above, Mr. Griffey hasn't shown that the affidavit was deliberately or recklessly false, and the Court views the affidavit as "making a substantial showing of probable cause[,]" *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 147, at least as to a search for DUI-related items.  *See United States v. Davis*, No. 13-68, 2014 WL 1394304, at *7 (W.D. Pa. Apr. 9, 2014) (Hornak, J.) (applying good-faith exception where probable cause existed to search for drugs but was

overbroad in including weapons).  Mr. Griffey hasn't put forth any arguments as to the other two exceptions, nor is there any evidence to suggest that they would apply.

For these reasons, the Court denies the motion to suppress evidence stemming from the seizure of Mr. Griffey and the search of the car.[9]

\*        \*        \*

**AND NOW**, this **10th day of March, 2025**, it is hereby **ORDERED** that, for the reasons stated above, Mr. Griffey's motion to suppress (ECF 46) is **DENIED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[9] Mr. Griffey also seeks suppression of any statements made while in custody, but hasn't identified any such statements.  ECF 46, pp. 25-26.  The government does not intend on introducing into evidence any statements made by Mr. Griffey following his arrest, and is otherwise unaware of what specific statements Mr. Griffey seeks to suppress.  ECF 52, p. 26.  This issue is therefore moot.