IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 2:23-66 |
| | ) | |
| ROMAN GRIFFEY | ) | |

### MOTION TO DISMISS OR STRIKE "SPECIAL FINDINGS" RELATED TO THE ARMED CAREER CRIMINAL ACT FROM THE INDICTMENT

Roman Griffey is charged in a three-count indictment. The alleged conduct underlying these charges is that Mr. Griffey went to pick up his son's mother at the airport, parked improperly, and later was subjected to a search of his car where officers found suspected drugs and a firearm. If convicted, Mr. Griffey faces a mandatory 20 years of prison time, in large part based on the Armed Career Criminal Act enhancement charged at Count Two under 18 U.S.C. §§ 922(g)(1) and 924(e). The ACCA enhancement charges a mandatory 15-year prison term because of the government's allegation that Mr. Griffey has four prior qualifying offenses.

Mr. Griffey respectfully moves to dismiss or strike the "Notice of Special Findings" related to the ACCCA from the indictment, because he is not subject to the ACCA or its enhanced penalties as a matter of law. The Notice alleges that Mr. Griffey was previously convicted of four "serious drug offenses and violent felonies … committed on occasions different from one another." Three out of four alleged prior offenses are drug-related (heroin) in 2013 and 2017, and one is an aggravated assault from 2017. *See* Indictment, ECF 1 at 4. The inclusion of those "special findings" threatens to subject Mr. Griffey to a fifteen-year mandatory-minimum sentence and enhanced sentencing guidelines in this case.

The "Special Findings" list the following alleged ACCA predicate offenses:

- Delivery of a Controlled Substance (Heroin), 35 Pa. C.S. § 780-113(a)(30), Case No. CP-02-CR-3945-2013, sentencing date September 12, 2013,

- Delivery of a Controlled Substance (Heroin), 35 Pa. C.S. § 780-113(a)(30), Case No. CP-02-CR-3945-2013, sentencing date September 12, 2013,

- Aggravated assault, 18 Pa. C.S. § 2701(a)(1), Case No. CP-02-CR-2475-2017, sentencing date July 31, 2017, and

- Possession with intent to distribute a Controlled Substance (Heroin), 35 Pa. C.S. § 780-113(a)(30), Case No. CP-02-CR-5981-2017, sentencing date August 22, 2017.

*See* ECF 1 at 4.

None of these offenses qualify as ACCA predicates as a matter of law. First, Pennsylvania law criminalizes all isomers of heroin, whereas the federal definition criminalizes only some ("non-optical") isomers of heroin. Therefore, applying the categorical approach—which the Supreme Court recently reaffirmed in *Brown* as the way to determine whether state offenses count as ACCA predicates—each of Mr. Griffey's past drug offenses were, on their face, broader than their federal analogue at the time of his state convictions. As a result, those offenses are not "serious drug offenses" under 18 U.S.C. § 924(e), and the ACCA does not apply to Mr. Griffey.

Next, Mr. Griffey's prior aggravated assault conviction does not qualify as a "serious violent felony" under the ACCA because the statute sweeps in attempts, which do not qualify as violent felonies under *United States v. Taylor*, 596 U.S. 845

(2022), and because the statute criminalizes reckless conduct, which does not qualify under *Borden v. United States*, 593 U.S. 420, 445 (2021).

For all those reasons, discussed in full below, the indictment's "Special Findings" are irrelevant, legally erroneous, and highly prejudicial. The Court should grant Mr. Griffey's motion under Fed. R. Crim. P. 12(b)(1) and 7(d) and dismiss or strike the "Special Findings" related to ACCA concerning count two of the indictment. As explained more below, Judge Horan recently granted a similar motion in *United States v. Slade*, No. 2:23-cr-254, ECF 86 (W.D. Pa. Oct. 22, 2025) (granting motion to strike special findings relating to ACCA based on prior PA cocaine offenses).

## ARGUMENT

The Armed Career Criminal Act, codified in 18 U.S.C. § 924(e), provides that any person who violates a provision of 18 U.S.C. § 922(g) and has "three previous convictions by any court … for a violent felony or a serious drug offense, or both, committed on occasions different from one another," shall be "imprisoned not less than fifteen years." 18 U.S.C. § 924(e). "ACCA defines 'serious drug offense' as offenses listed in the Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1242 (1970), and as state offenses involving substances on the Federal Schedules of Controlled Substances, 21 U.S.C. § 802, that carry a term of imprisonment of ten years or more." *United States v. Brown*, 47 F.4th 147, 149 (3d Cir. 2022), *aff'd*, 602 U.S. 101 (2024). The ACCA defines a "violent felony" in relevant part as a crime punishable by a term of imprisonment of over one year and that "has an element the

3

use, attempted use, or threatened use of physical force against the person of another . . . ." 18 U.S.C. § 924(e)(2).

Mr. Griffey's state drug and aggravated assault convictions alleged in the indictment don't fit that bill.

**I.  The Court must use the "categorical approach" to determine whether Mr. Griffey's alleged convictions are ACCA predicates.**

"A state drug offense counts as an ACCA predicate only if the State's definition of the drug in question 'matches' the definition under federal law." *Brown v. United States*, 602 U.S. 101, 106 (2024) (cleaned up).

To determine whether the state's definition of a drug is a "match" to the corresponding federal definition, the Court applies a "categorical approach," under which it looks "only to the statutory definitions" of the controlled substance at-issue under state and federal law, and not to "the particular facts underlying the prior convictions." *Shular v. United States*, 589 U.S. 154, 157 (2020) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)); *Mathis v. United States*, 579 U.S. 500, 509-10 (2016)); *see also Mathis*, 579 U.S. at 513 ("ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence.").

What that means is this: If a state drug schedule encompasses controlled substances that are not included in the federal drug schedules, then the state offense is categorically overbroad and does not qualify as a "serious drug offense." *See Brown*, 47 F.4th 147, 149-50 (considering whether state statute, which criminalized all forms

of the cannabis plant, was a match for federal statute, which removed hemp from the CSA); *United States v. Owen*, 51 F.4th 292, 295 (8th Cir. 2022) ("The question for us is whether Minnesota's definition of cocaine sweeps more broadly than the one in the federal controlled-substance schedules.").

Indeed, if the state drug statute "criminalizes even one additional isomer" of a controlled substance that the federal CSA does not, it is not a "serious drug offense" for purposes of the ACCA. *Owen*, 51 F.4th at 269 (emphasis added); *United States v. Minter*, 80 F.4th 406, 409 (2d Cir. 2023) ("A state's criminalization of a single substance not also prohibited by the CSA is often enough to prevent a prior conviction from triggering a federal sentencing enhancement."); *see also United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) ("Because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine, the mismatch renders the Indiana statute overbroad."); *United States v. Espy*, No. 2:18-332, 2022 WL 247833, at *3 (W.D. Pa. Jan. 27, 2022) (Horan, J.) ("The federal definition of heroin includes heroin and its optical isomers only. Pennsylvania's definition of heroin, however, includes heroin and its salts, isomers, and salts of isomers; which necessarily includes non-optical isomers not covered under federal law. Therefore, on its face, the Pennsylvania definition of heroin covers a wider range of conduct than the federal definition.").

In making that comparison, the Court looks to whether "the drugs on the federal and state schedules matched" at the time "when the state drug offense was committed." *Brown*, 144 S. Ct. at 1208.

The categorical approach similarly applies to determining whether Mr. Griffey's prior aggravated assault conviction counts as a violent felony under the ACCA. The "**facts of a given case are irrelevant**," and this Court must instead consider whether the elements of the statute of conviction necessarily involve the use, attempted use, or threatened use of physical force against another person. *Borden*, 593 U.S. at 424 (emphasis added). If "any—even the least culpable—of the acts criminalized" under the statute do not necessarily include kind of force defined in the ACCA, "the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *See id.*

First, Mr. Griffey turns to the prior drug convictions noticed in the indictment.

II. **Pennsylvania heroin offenses are not "serious drug offenses" under ACCA, because they are categorically broader than their federal counterparts.**

   A. **Pennsylvania criminalizes every "derivative" of heroin, a broad category which includes all of heroin's "isomers."**

Isomers are chemical molecules that share a molecular formula—*i.e.,* contain the same number of atoms of each constituent element—but differ in how those atoms are arranged in space. *See* Ernest L. Eliel *et al., Stereochemistry of Organic Compounds* 1021 (1994). They are, in other words, reorganized versions of otherwise identical molecules. In general, "[t]here are two broad types of isomers:

*stereoisomers*—isomers in which the atoms are joined in the same order, but in a different spatial arrangement—and *constitutional* isomers, which are all other isomers, including what are termed 'positional isomers.'" *Minter*, 80 F.4th at 410 (emphasis added). "Optical and geometric isomers, which are mentioned in the DEA's definition of 'isomer,' are sub-types of *stereoisomers*. Positional isomers—also noted in the DEA's definition of 'isomer'—are a sub-type of constitutional isomers." *United States v. Phifer*, 909 F.3d 372, 377 (11th Cir. 2018) (emphasis added).

Heroin has multiple isomers, and Pennsylvania criminalizes all of them. Pennsylvania's drug schedule defines heroin-related controlled substances as follows:

> Any of the following opium derivatives, their salts, **isomers** and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers and salts of isomers is possible within the specific chemical designation: . . . heroin.

35 P.S. § 780-104(1)(ii)(10) (emphasis added). This definition was the same at the time of the commission of all drug offenses alleged in the indictment. In no uncertain terms, it sweeps in *all* isomers of heroin.

The Pennsylvania legislature knew how to limit the sweep of its statutes to specific types of isomers when it intended to do so. *See, e.g.*, 35 P.S. § 780-104(2)(iii)(1) (1972) (listing "Amphetamine, its salts, optical isomers, and salts of its optical isomers"). As this subsection illustrates, for some substances the legislature expressly includes only "*optical* isomers" or "salts of [] *optical* isomers," § 780-104(2)(iii)(1) (emphasis added throughout this paragraph). For some, the legislature includes *all* isomers and salts of isomers, § 780-104(2)(iii)(4) (methamphetamine). And for some,

7

the legislature includes *no* isomers, § 780-104(2)(iii)(2), (3) and (5) (phenmetrazine, methylphenidate, and lisdexamfetamine). *See also e.g.*, § 780-104(1)(vii) (elsewhere identifying certain substances "their salts, isomers, *whether optical, positional or geometric*, analogues, homologues and salts of isomers…).

"[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004). Other courts have relied on this same statutory treatment to explain that when a state legislature prohibits isomers in one provision yet identifies "optical, positional, and geometric isomers" in another, it has purposefully used the former language to proscribe a different (and broader) set of substances than the later. *See United States v. Ruth*, 966 F.3d 642, 648 (7th Cir. 2020) (rejecting government argument that this language is "nothing but spilled ink" and admonishing it is not the province of the judiciary to rewrite a statute). Here, there is no basis to assume that Pennsylvania law criminalizes only certain types of heroin's isomers when the legislature has done so elsewhere and did not do so here. Rather, it criminalizes all of them.

### B. Federal law criminalizes only "optical" and "geometric" isomers of heroin.

Meanwhile, unlike Pennsylvania law, federal law criminalizes only some of heroin's isomers. As defined under federal law, 21 U.S.C. § 801 *et seq.*, heroin excludes all non-optical isomers. Heroin is listed as a Schedule I(B) controlled substance in the CSA. *See* 21 U.S.C. § 812(b)(1)(B) (defining Schedule I(B) drugs as having "no

8

currently accepted medical use in treatment in the United States"). Schedule I(b)(10) criminalizes heroin, including its "isomers." *See id.*, Schedule I(b).

But unlike Pennsylvania, federal law expressly defines the "term 'isomer'" to include the "optical isomer" *only* for heroin, a Schedule I(b) drug. *See* 21 U.S.C. § 802(14). That subsection says:

> The term "isomer" means the *optical isomer*, except as used in schedule I(c) and schedule II(a)(4). As used in schedule I(c), the term "isomer" means any optical, positional, or geometric isomer. As used in schedule II(a)(4), the term "isomer" means any optical or geometric isomer.

Put another way, as applied to heroin (Schedule I(b)), isomer includes *only* the optical isomer. *See id.* These definitions were the same during all alleged prior drug offenses in the Notice of Special Findings. *See* ECF 1 at 4.

That limitation is underscored by the federal definition of "isomer" as applied to other controlled substances, such as hallucinogens, where the definition extends to the "optical, positional, [and] geometric" isomers of those controlled substances. 21 U.S.C. § 802(14); see also 21 C.F.R. § 1300.01(b); 21 C.F.R. § 1308.11(d) (defining hallucinogens to include its "optical, positional, or geometric" isomers (emphasis added)); *see also Minter*, 80 F.4th at 410 ("The CSA includes only stereoisomers— optical and geometric—in its definition of cocaine, but includes certain constitutional isomers in its definitions of other drugs.").

Other district courts have recognized that Pennsylvania's definition of heroin is broader than its federal counterpart. In *United States v. Espy*, the district court explained that "[t]he federal definition of heroin includes heroin and its optical

isomers only," while "Pennsylvania's definition of heroin, however, includes heroin and its salts, isomers, and salts of isomers; which necessarily includes non-optical isomers not covered under federal law." No. 2:18-332, 2022 WL 247833, at *3 (W.D. Pa. Jan. 27, 2022) (Horan, J.) (in career offender context); *United States v. Bell*, No. 3:23-26, 2024 WL 1892283, at *12 (M.D. Pa. Apr. 30, 2024) ("Defendants were convicted under 35 Pa. Stat. Ann. § 780-113(a)(30) for possessing heroin. That offense, because it could involve isomers of heroin other than the optical isomer, does not categorically meet 18 U.S.C. § 924(e)(2)(A)(ii)'s criterion that the offense involve a 'controlled substance' as defined by Controlled Substances Act, which only includes optical isomers of heroin. Therefore, the court concludes that Defendants' Pennsylvania convictions cannot subject them to 21 U.S.C. § 841(b)(1)(A)'s 25-year mandatory minimum sentence.");*United States v. Myrick*, No. CR 19-354, 2023 WL 2351693, at *4 (E.D. Pa. Mar. 2, 2023) ("[I]t is clear on the face of these statutes that Pennsylvania's is broader; someone could be charged with possessing a non-optical isomer of heroin under Pennsylvania law but not under federal law. … Moreover, the courts in this circuit that have considered the question have found that Pennsylvania's definition of heroin is unquestionably broader than that found in the CSA."); *see also United States v. Ward*, No. 2:18-148, 2021 WL 5604997, at *1 (W.D. Pa. Nov. 30, 2021) (Bissoon, J.) ("Because the plain language of Pennsylvania's definition covers a larger swath of conduct than its federal counterpart, *i.e.*, all isomers of heroin as opposed to only its optical isomer, Ward's statute of conviction is

10

categorically broader than the federal definition.") (overruling argument as to career offender predicate drug offenses on other grounds).[1]

*Bell* involved considering a prior drug offense to see whether it qualified for the increased penalties under 21 U.S.C. § 841(b)(10)(A). That qualification uses the same definition as applicable here in the ACCA context. *See Bell*, 2024 WL, at *2 (citing § 924(e)(2)(A)(ii)). In *Bell*, the district court looked to the Pennsylvania Superior Court's decision in *Commonwealth v. Slyman*, 483 A.2d 519 (Pa. Sup. Ct. 1984), to provide guidance, even though *Slyman* dealt with cocaine and not heroin. In *Slyman*, the Pennsylvania appellate court examined applicable statutory language to find that the state's controlled substances act intended to criminalize "all varieties of cocaine." *Slyman*, 483 A.2d at 525.

In *Bell*, the federal court took from *Slyman* "the more general principle that, where the Act controls all isomeric forms of a particular substance, the Commonwealth need not prove that the substance possessed was a particular one of those isomers to sustain a conviction." *Bell*, 2024 WL, at *9. Therefore, it found that the court had to consider the state definition of heroin (as a whole, including all isomers) against the federal definition of heroin (including only non-optical isomers).

---

[1] *Espy*, *Myrick*, and *Ward* have been abrogated by the Third Circuit's decision in *United States v. Lewis*, which found that the definition of a "controlled substance offense" in the career offender guideline is one controlled under state or federal law. 58 F.4th 764, 769 (3d Cir. 2023). Despite *Lewis*, the statutory analysis in these cases finding that Pennsylvania's definition of heroin is broader than the federal one still holds true.

*Id.* at *10. After doing so, it found that because the state definition was broader, it must conclude that the Pennsylvania conviction could not qualify under the ACCA's definition of a serious drug offense. Similarly, after undertaking the same analysis, the *Myrick* court found "it is clear on the face of these statutes" that the Pennsylvania definition of heroin was broader than the federal one. *Myrick*, 2023 WL, at *4.

This Court should reach the same result. Pennsylvania's definition of heroin, both on its face and as interpreted by state authority, is categorically broader than the corresponding federal definition. That is, the federal CSA criminalizes only optical and geometric isomers of heroin, while Pennsylvania criminalizes all heroin isomers, including its positional isomers. Because of this categorical mismatch, Mr. Griffey's prior drug convictions for heroin cannot serve as predicate "serious drug offenses" to trigger the ACCA's 15-year mandatory-minimum.

**III.   Mr. Griffey's prior aggravated assault conviction does not qualify as an ACCA predicate because it can be committed recklessly and because it is complete upon an attempt to cause injury.**

If this Court agrees that a prior Pennsylvania conviction for distribution of heroin does not qualify as an ACCA predicate "serious drug offense," it need not continue to analyze whether Mr. Griffey's prior aggravated assault conviction qualifies as an ACCA predicate. That's because without the prior drug convictions, Mr. Griffey would have only one prior felony for ACCA purposes, and he would not qualify for the mandatory 15-year prison term. But even if this Court then considers

12

aggravated assault, it must find that the conviction cannot meet the requirements of a "violent felony" under the ACCA.

Under Pennsylvania law, a person commits first-degree aggravated assault if he attempts to cause serious bodily injury to another or causes such injury "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. § 2702(a)(1). Because this form of assault can be committed upon attempting to cause injury and, under Pennsylvania law, a criminal attempt requires no more than a "substantial step" corroborating the actor's intent to commit the offense, such as searching for the intended victim. Recently, Judge Fischer found that an aggravated assault prior did not qualify as a career offender predicate for this reason in *United States v. Pollard*, ECF 61, No. 2:24-cr-101 (W.D. Pa. July 17, 2025).[2] In addition, because it can be committed recklessly, it does not qualify as a violent felony under controlling Supreme Court precedent. *See Borden v. United States*, 593 U.S. 420, 445 (2021).[3]

---

[2] Although *Pollard* dealt with a challenge to the career offender enhancement (not ACCA), the district court correctly recognized that with respect to career offender and ACCA challenges, "courts generally apply authority interpreting one provision to the other." *Pollard* at 9 (quoting *United States v. Brasby*, 61 F.4th 127, 132-33 (3d Cir. 2023)). Unlike for prior drug offenses, the analysis in *Pollard* is identical between the ACCA and career offender contexts.

[3] The Third Circuit had previously held that Section 2702(a)(1) is not an ACCA predicate for a different reason—that it can be committed by omission. *United States v. Harris*, 87 F.4th 195 (3d Cir. 2023). That ruling was abrogated by *Delligatti v. United States*, 145 S. Ct. 797 (2025), which does not affect the different arguments presented here.

**A. § 2702(a)(1) is indivisible between attempting to cause and causing serious bodily injury.**

Section 2702(a)(1) uses disjunctive language to describe offenses that can be committed in more than one way: by attempting to cause serious bodily injury or by causing such injury intentionally, knowingly or extremely recklessly. That requires the Court to determine whether the listed alternatives are elements of different offenses, or merely different factual means of satisfying the same element of a single offense. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 579 U.S. 500, 504 (2016). By contrast, factual means need not be charged in every case or found unanimously by the jury, so long as jurors agree one or another of the means appears beyond a reasonable doubt. When a statutory provision lists merely alternative means, it is "indivisible" for purposes of the categorical approach, *id.* at 505, and the single offense it defines cannot qualify as an ACCA predicate unless every means of committing it necessarily entails violent force. *Descamps v. United States*, 570 U.S. 254, 272-73 (2013).

A critical test for distinguishing means from elements is dispositive with respect to § 2702(a)(1). If more than one alternative may be charged in a single count, that "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Mathis*, 579 U.S. at 519.

14

Even if § 2702(a)(1) were divisible, Mr. Griffey's aggravated-assault conviction would still not be an ACCA predicate for the reasons set forth in Section B because it can be committed through an attempt, and in Section C because it can be committed recklessly.

**B. Aggravated assault under § 2702(a)(1) is not an ACCA predicate because it reaches attempts.**

Section 2702(a)(1) incorporates an attempt offense into the crime of aggravated assault, as the Supreme Court of Pennsylvania recently reaffirmed. *United States v. Harris*, 289 A.3d 1060, 1072-73 (Pa. 2023); *see also Commonwealth v. Lewis*, 911 A.2d 558, 565 (Pa. Super. 2006) (upholding conviction where evidence was "sufficient to establish that Appellant caused serious bodily injury or intended to inflict serious bodily injury"). The statute's coverage of attempts renders aggravated assault not an ACCA predicate under *United States v. Taylor*, 596 U.S. 845 (2022).

In *Harris*, the Pennsylvania Supreme Court explained that § 2702(a)(1) derives from Model Penal Code § 211.1(2)(a), which combines into a single aggravated assault crime the common law offenses of mayhem, assault (*i.e.*, attempted battery), and battery—with numerous modifications. 289 A.3d at 1072-73. With respect to attempt, common-law assault required "present ability" to effect a battery. *Id.* This was a "stricter notion of proximity to the completed act than characterized the law of criminal attempt," and the MPC "discard[s]" that requirement "in favor of the normal application of attempt principles." Model Penal Code Commentaries, Part II, § 211.1, American Law Institute (1980), at 177, 184.

15

Thus, any substantial step toward a battery strongly corroborating a criminal intent to seriously injure—*e.g.*, searching for the intended victim—supports an MPC and § 2702(a)(1) aggravated assault conviction under state law. *Id*. at 184 (citing MPC § 5.01); *Commonwealth v. Donton*, 654 A.2d 580, 585 (Pa. Super. 1995) (upholding § 2702(a)(1) conviction took substantial step by travelling toward intended victim's house before being arrested en route). That takes § 2702(a)(1) outside the scope of the ACCA, as such substantial steps under Pennsylvania law do not necessarily require the use or attempted use of force necessary to qualify as ACCA predicates under federal law. *See Taylor*, 596 U.S. at 850-51 (analyzing materially identical element-of-force clause in 18 U.S.C. § 924(c)). For the force clause in the ACCA, attempted use of force is required, and the Supreme Court has made very clear that involves more than a substantial step. *See id.*

Moreover, even were the Court to conclude that § 2702(a)(1) is divisible as a matter of law, the government must prove that *Shepard* documents from Mr. Griffey's prior conviction records rule out the possibility that the statute's coverage of attempts forms the basis for the conviction. It will be unable to do so. When the government could not meet its burden in the face of a similar challenge to a defendant's aggravated assault prior conviction under § 2701(a)(1), Judge Fischer held recently that the prior conviction could not count as a career offender predicate. *See Pollard*, at 15 ("[T]he charge in the information quotes the entire statutory provision of § 2702(a)(1) and the other *Shepard* documents do not specify a particular clause of § 2702(a)(1) to which the defendant pled guilty.").

16

**C. In addition, aggravated assault under § 2702(a)(1) is not a violent felony because it can be committed recklessly.**

**1. To qualify as an ACCA predicate, an offense's elements must require purposeful or knowing conduct targeting another individual.**

As relevant here, the ACCA defines a predicate "violent felony" as a crime punishable by more than one year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Construing this "elements clause," the Supreme Court held in *Borden* that "the phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." 593 U.S. at 429 (plurality opinion). Because "[r]eckless conduct is not aimed in that prescribed manner," it is beyond the scope of the elements clause. *Id.*; *see United States v. Henderson*, 80 F.4th 207, 212 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 1379 (2024) (explaining that *Borden* requires that perpetrator act with an "intended target" or "conscious object").

To illustrate the point, *Borden* postulated three different vehicular assaults. In the first, "a person drives his car straight at a reviled neighbor, desiring to hit him." 593 U.S. at 432. Such "purposeful conduct" aims "physical force against the person of another." *Id.* In the second scenario, "a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over." *Id.* This "knowing behavior" also "fits within the statute" because the driver "consciously deployed the full force of an automobile at another person." *Id.*

17

In the third scenario, a driver "decides to run a red light, and hits a pedestrian whom he did not see." *Id.* Although this reckless driver "consciously disregarded a real risk, thus endangering others," unlike the first two he has "not directed force at another: He has not trained his car at the pedestrian understanding he will run him over." *Id.*

The term "violent felony," *Borden* adds, supplies a context marking out a "narrow 'category of violent, active crimes'" best understood to involve "a purposeful or knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk." 593 U.S. at 438 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). Furthermore, a requirement of targeted action accords with Congress's purpose of disarming "the sort of offender who, when armed, 'might deliberately point the gun and pull the trigger.'" *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 146 (2008)).

In a footnote, *Borden* found "no occasion to address" whether the elements clause reaches crimes having a mental state of "extreme recklessness," *i.e.*, a mental state "between recklessness and knowledge." 593 U.S. at 429 n.4. But it is quite clear from the opinion's logic that extreme-recklessness crimes do not qualify, because one who acts extremely recklessly—however depraved his conduct—by definition does not "direct his action at, or target, another individual." *Id.* at 429.

In sum, ACCA's elements clause does not define a violent felony to include "disregard-of-risk offenses" that are "far removed from the deliberate kind of behavior

18

associated with violent criminal use of firearms." *Id*. at 439 (quoting *Begay*, 553 U.S. at 147).

### 2. Section 2702(a)(1) does not require purposeful or knowing conduct targeting another individual.

Pennsylvania case law makes clear that the Commonwealth may obtain a conviction under § 2702(a)(1) without proving the defendant directed his action at, or targeted, another individual. Indeed, the leading decision describes the offense's mental state in terms echoing *Borden's* description of non-qualifying offenses: it consists in "recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct might cause a death or serious personal injury." *Commonwealth v. Packer*, 168 A.3d 161, 172 (Pa. 2017) (emphases added).

In *Packer*, the Supreme Court of Pennsylvania explained that this "extreme indifference" standard embodies the same "high degree of recklessness" that Pennsylvania law has termed "malice" in distinguishing third-degree murder and manslaughter. 168 A.3d at 163. The defendant and a friend purchased two cannisters of compressed dust remover at a Walmart and, while driving away, repeatedly "huffed" the contents. The defendant knew from experience that huffing sometimes caused her to lose consciousness. Moments later, she "became unresponsive" or, as her passenger later described it, "'zombified,' driving with her eyes open and staring straight ahead," but not "'really there.'" *Id*. at 163-64. The vehicle drifted across the center lane and collided with an oncoming vehicle, killing the driver.

19

The state supreme court held this evidence sufficient to meet the extreme recklessness standard embodied in § 2702(a)(1). It explained that while the mental state associated with intoxicated driving is typically negligence or ordinary recklessness, there are "very limited circumstances" in which "wanton and reckless conduct" rises to the level of "extreme indifference." *See* 168 A.3d at 169-170 (citation omitted). Such extreme indifference can consist, for example, in "sustained recklessness over a considerable period of time" despite an obvious risk of harm. *Commonwealth v. Peters*, 320 A.3d 1231, 1243 (Pa. Super. 2024) (en banc), *appeal granted*, No. 409 MAL 2024, 2025 WL 30772 (Pa. Jan. 6, 2025).

A person does not direct her action at, or target, another individual when she becomes unconscious and loses control of a vehicle. While such a driver may "deliberately engage in dangerous behavior that poses an obvious risk of physical harm to others," *Borden*, 593 U.S. at 479 (Kavanaugh, J., dissenting), a "degree of callousness toward risk" falls short of the mental state separating violent felonies from lesser crimes. *Id.* at 439 (quoting *Begay*, 553 U.S. at 146). Accordingly, aggravated assault in violation of § 2702(a)(1) is not an ACCA predicate.

*          *          *

For all the reasons discussed above, Mr. Griffey is not subject to the ACCA's harsh penalties, because his drug offenses and aggravated assault prior are not "serious drug offenses" or "violent felonies" under 18 U.S.C. § 924(e). The Court should grant Mr. Griffey's motion and dismiss or strike the allegations concerning § 924(e) and the "Notice of Special Findings" from the indictment.

20

Respectfully submitted,

*/s/ Sarah Levin*
Sarah Levin
Managing Attorney, Trial Unit

*/s/ Elizabeth Patton*
Elizabeth Patton
Assistant Federal Public Defender