**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 2:23-cr-66 |
| v. | ) | |
| | ) | |
| ROMAN GRIFFEY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER**

The government has brought a three-count indictment against Roman Griffey. ECF 1. Under Count II, the government alleges that the Armed Career Criminal Act applies to Mr. Griffey and should serve as an enhancement under 18 U.S.C. §§ 922(g)(1) and 924(e). Mr. Griffey disagrees. Mr. Griffey moves to strike the "Notice of Special Findings" as it relates to the ACCA and dismiss the ACCA enhancement under Count II because, as a matter of law, Mr. Griffey argues that the ACCA doesn't apply to him. ECF 99.

The Court agrees with Mr. Griffey. For the ACCA to apply, the government would need to prove that Mr. Griffey has "three previous convictions . . . for a violent felony or serious drug offense, or both" under Section 924(e). The government relies on Mr. Griffey's three convictions under Pennsylvania law for heroin-related offenses to qualify as "serious drug offense[s]." § 924(e).[1] These convictions do not qualify as "serious drug offenses" under Section 924(e).

---

[1] The indictment also notes that Mr. Griffey has a fourth conviction for aggravated assault under Pennsylvania law. ECF 1. Mr. Griffey argues that this doesn't qualify as a "violent felony" under the ACCA, but the Court doesn't reach the argument. Mr. Griffey has four total convictions referenced, and three convictions related to heroin under Pennsylvania law. So his claim that the ACCA doesn't apply to him rises and falls with whether Pennsylvania's heroin laws qualify as a "serious drug offense" under Section 924(e).

The central issue is whether Pennsylvania's definition of heroin is broader than the federal definition of heroin. "A state crime may not qualify as a 'serious drug offense'—and thus may not serve as an ACCA predicate—if its elements are different from or broader than the generic [federal] version of that offense." *United States v. Brown*, 47 F.4th 147, 149 (3d Cir. 2022), *aff'd*, 602 U.S. 101 (2024). The Third Circuit has yet to address Pennsylvania's heroin laws in this context, but several district courts have found that Pennsylvania's law sweeps broader than its federal counterpart by defining heroin more broadly. *See, e.g.*, *United States v. Ward*, No. 2:18-148, 2021 WL 5604997, at *1 (W.D. Pa. Nov. 30, 2021) (Bissoon, J.); *United States v. Espy*, No. 2:18-332, 2022 WL 247833, at *3 (W.D. Pa. Jan. 27, 2022) (Horan, J.).

On careful review, the Court finds that the Pennsylvania's statute sweeps more broadly than federal law. The Court begins with the plain text of the statute. Under federal law, 21 U.S.C. § 812(b)(10) states that "any of the following opium derivatives, their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation [is a Schedule I(b) controlled substance]: heroin." "Isomer" is expressly restricted to mean heroin's "optical isomer." 21 U.S.C. § 802(14). Under Pennsylvania law, "[a]ny of the following opium derivatives, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers and salts of isomers is possible within the specific chemical designation [is a Schedule I(ii) controlled substance]: heroin." 35 Pa. Stat. § 780-104(1)(ii). Isomers are not restricted to heroin's "optical isomer." No one disputes that an "optical isomer" is a narrower subset of an "isomer." That alone makes Pennsylvania's statute broader. The chart below summarizes the facial differences between the two statutes.

2

| Pennsylvania Definition | Federal Definition |
|---|---|
| Any of the following opium derivatives, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of such salts, isomers and salts of isomers is possible within the specific chemical designation: <br> . . . <br> 10. Heroin <br><br> 35 Pa. Stat. § 780-104(1)(ii) | Unless specifically excepted or unless listed in another schedule, any of the following opium derivatives, their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation: <br> . . . <br> 10. Heroin <br><br> 21 U.S.C. § 812(b)(10) |
| No definition of isomer. | The term "isomer" means the optical isomer. . . . <br><br> 21 U.S.C. § 802(14) |

The government makes three main arguments in response to this facial difference, but none succeed.

First, it argues that the statutes aren't different because "non-optical isomers of heroin that are designated as heroin do not exist as a matter of chemistry." ECF 102 at 13 (cleaned up). The Court disagrees.

Broadly speaking, heroin is an opiate, meaning its molecular structure is structurally related to morphine. *See* ECF 107-1 at 9. On a more technical level, heroin is a chemical compound that has the specific molecular formula, $C_{21}H_{23}NO_5$. *Id.* at 5. In total, heroin is made up of 50 atoms. *Id.* The structure of those atoms matters, because the atoms that make up heroin have a "unique two and three-dimensional arrangement." *Id.* Keep the same core makeup of those 50 atoms, but change up the arrangement, and you no longer have heroin—you have an isomer of heroin. *Id.*

"'[I]somer' refers to molecules that have the same molecular formula (same numbers and types of atoms) [as the comparison substance], but within each of these molecules the atoms are connected differently in either a two- or three-dimensional

3

manner." *Id.* at 3. An isomer of a chemical compound is like an anagram of a word; exactly the same letters as the original, just arranged differently. Like the words "thing" and "night."

There are two main groups of isomers: stereoisomers and constitutional isomers. *Id.* Stereoisomers have the same bonding patterns as the chemical compound, but differ in how the atoms are arranged. *Id.* Constitutional isomers have a different bonding pattern. *Id.* Out of the two groups of isomers, stereoisomers "have a very similar structure to the comparison substance." *Id.*

Stereoisomers can be further broken down into enantiomers and diastereomers. *Id.* An optical isomer of heroin is the enantiomer of heroin.[2] *Id.* at 3–5. The optical isomer of heroin is the mirror image of heroin, like the left hand is to the right. *Id.* Because there can only be one mirror image, there is only one optical isomer of heroin. *Id.*

Thus, any isomer of heroin that isn't the one optical isomer would be a non-optical isomer of heroin (and not included under the federal law's coverage). So the focus is whether any non-optical isomer of heroin is an opiate like heroin, such that Pennsylvania probably meant to include it in its statute's coverage.

The defense's expert, Dr. More, identified three non-optical isomers of heroin that fit the bill: one stereoisomer, isoheroin (a diastereomer isomer), and two constitutional isomers, beta-isoheroin and gamma-isoheroin. *Id.* at 7–8. All of these non-optical isomers are opiates, just like heroin. *Id.* at 9.

Federal law chose to limit isomers of heroin to the optical isomer of heroin only. Pennsylvania law chose not to be so narrow. And a deeper dive into the chemistry

---

[2] An "optical" isomer is an outdated term in chemistry. *Id.* at 4. It gained its name based on the method for identifying enantiomers, through optical activity or optical rotation. *Id.* Now, chemists have more modern methods of identifying enantiomers, making the name "optical" not as current. But because the federal statute references the "optical" isomer, the Court uses the same term.

shows that the difference in choice there isn't meaningless. Pennsylvania law criminalizes non-optical isomers of heroin, and at least some of those isomers are opiates like heroin. That makes Pennsylvania law broader not just on its face, but in substance, too.

Second, the government argues that even if Pennsylvania law covers non-optical isomers of heroin, the "controlled substance analogue" under 21 U.S.C. § 802(32) would cover such substances and the state statute would still "match" the federal statute. But under the ACCA, the state-law offense must concern a controlled substance. § 924(e)(2)(A)(ii). By definition, the "controlled substance analogue" that the government references does not cover controlled substances. § 802(32)(C)(i). So if this analogue did apply, that would mean that the ACCA didn't. This argument doesn't work either.

Third, the government argues that the "realistic probability" doctrine applies. It doesn't. The realistic probability doctrine would cause this Court to consider the "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct falling outside the generic definition." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 184 (2007). That would certainly help the government's position, as it has offered evidence that Pennsylvania does not prosecute non-optical isomers of heroin. *See* ECF 102-5 at 4. But courts only invoke the realistic probability doctrine where the elements of the state crime are identical to the elements of the federal offense. *Ndungu v. Att'y Gen.*, 126 F.4th 150, 168 (3d Cir. 2025). It can't be used as a gap filler to secure a categorical match. *See id.* (noting that the realistic probability doctrine cannot be used "as a means of arriving at a categorical match"). The realistic probability doctrine does not apply here.

*****

In sum, the Court finds that the alleged predicate felonies listed in the notice of special findings in the indictment do not qualify as "serious drug offense[s]" under the ACCA. The Court thus strikes paragraphs 2(a), (b), and (d) from the Notice of Special Findings in the indictment, and strikes the Section 924(e) enhancement from Count II of the indictment.

DATED this 24th of March, 2026

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge
