**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 2:23-cr-66 |
| v. | ) | |
| | ) | |
| ROMAN GRIFFEY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM ORDER</u>**

The Court previously struck the ACCA enhancement from Mr. Griffey's indictment. ECF 108. In doing so, the Court found that Pennsylvania's criminal definition of heroin was broader than its federal counterpart. *Id.* at 2. Though the federal government only criminalizes heroin's optical isomer, Pennsylvania criminalizes heroin's isomers generally, "whenever . . . possible[,] within the specific chemical designation." *See id.* at 2 (quoting 35 Pa. Stat. § 780-104(1)(ii)). That difference makes Pennsylvania's law broader. As the Court previously concluded, because Pennsylvania law is broader, Mr. Griffey's prior state drug convictions involving heroin can't serve as predicate acts for an ACCA enhancement.

The government moved for the Court to reconsider its ruling. ECF 113. The Court allowed the parties to supplement the record, in part, to allow for a complete record for any appeal. So the Court held an evidentiary hearing where both parties' experts testified, additional exhibits were admitted, and then briefs were filed.[1] The government's motion for reconsideration is now ready for disposition.

On careful review, the Court denies the government's motion. The government essentially argues that the Court got the chemistry wrong in its original ruling. After

---

[1] As discussed below, the experts were chemistry experts. At the hearing, both lead counsel (Mr. Fry and Ms. Levin) did an excellent job in examining these experts on very technical matters.

considering all evidence and argument presented by the government (whether on a reconsideration standard or on a *de novo* review), the Court disagrees.

The government's argument for Pennsylvania's law (not limited to optical isomers) matching its federal counterpart (limited to optical isomers) is two-fold. First, the government argues that the Court wrongly concluded that the term "optical isomer" is limited to the enantiomer of heroin. ECF 141 at 4. Second, it argues that the language "possible within the specific chemical designation" in Pennsylvania's statute and the federal statute essentially equalizes the two to mean the same thing. *Id.* at 11–12. The Court addresses each in turn.

## I.    Heroin's optical isomer is limited to its enantiomer.

The government argues that its unpaid expert (Mr. Bennett), and its proffered chemistry textbook definitions are more accurate than Mr. Griffey's paid expert (Dr. More, "who has made nearly $7,000 from this case"), and his proffered chemistry textbook definition. *Id.* at 8. Then on statutory grounds, it argues that the Court's interpretation goes against the plain language of the statute, undermines the ACCA, and leads to  absurd results. *Id.* at 4, 8, 10.

On the chemistry, the Court finds Dr. More's explanation more credible. Dr. More and Mr. Bennett presented a battle of the experts—a battle in which Dr. More won. The competing testimony, cross-examination, and competing literature on the subject doesn't change the Court's conclusion that the "optical isomer of heroin is the enantiomer of heroin." ECF 108 at 4.

On statutory interpretation grounds, the government's arguments don't fare any better. The government first invokes the "plain language of the statute." ECF 141 at 4. The plain language of the federal statute limits heroin's "isomer" to its optical isomer, and the statute doesn't define "optical" any further. 21 U.S.C. § 802(14). So the government's plain language argument is just the government's chemistry argument redressed, which the Court has addressed twice now.

2

The government next argues that the Court's interpretation "[s]ignificantly undermine[s]" the ACCA. ECF 141 at 8. It doesn't. Under the ACCA, "a state crime may not qualify as a 'serious drug offense'—and thus may not serve as an ACCA predicate—if its elements are different from or broader than the generic [federal] version of that offense." *United States v. Brown*, 47 F.4th 147, 149 (3d Cir. 2022), *aff'd*, 602 U.S. 101 (2024). The ACCA isn't undermined when courts apply ACCA jurisprudence. *See United States v. Harris*, 87 F.4th 195, 199 (3d Cir. 2023) (Jordan, J., concurring) (recognizing that the ACCA jurisprudence can create "wholly unsatisfying and counterintuitive" results (cleaned up)).

The government invokes the statutory canon against absurd results as a final push against limiting heroin's optical isomer to its enantiomer. ECF 141 at 10. The government's argument is this: (1) Mr. Bennett testified that Pennsylvania forensic labs and DEA labs are accredited to the same standards; (2) Pennsylvania labs are "incapable of determining whether a substance [meets Dr. More's] definition of heroin"; and (3) thus, should the Court adopt Dr. More's definition, the federal laws criminalizing heroin become "unenforceable." *Id.* at 10–11.

That's a stretch. Mr. Bennett, a state employee, is not well-positioned to opine on how DEA labs function. He admitted as much on the stand when he recognized that he wasn't up to date on the DEA's operating manuals. ECF 136 at 39–40. Mr. Bennett also never testified that Pennsylvania labs (let alone DEA labs) would be incapable of testing heroin under Dr. More's definition. Instead, Mr. Bennett testified that Pennsylvania labs don't make a chiral determination because chiral determination isn't spelled out under Pennsylvania law. *Id.* at 27. Rather the opposite to the government's conclusion, Mr. Bennett testified that it would be possible to "get down to [the chiral designation] level." *Id.* The government's own witness doesn't support the notion that federal enforcement of heroin laws now become "unenforceable." The Court's construction doesn't produce absurd results.

The Court's determination that heroin's optical isomer is limited to its enantiomer stands.

## II.    The language "possible within the specific chemical designation" doesn't equalize the two statutes.

Even if the Court adopted the government's enantiomer argument, it wouldn't be out of the woods yet.  Pennsylvania's statute would still be broader because it would cover certain constitutional isomers of heroin that the federal statute doesn't regulate.  ECF 108 at 4.  To address this point, the government contends that the language "possible within the specific chemical designation" present in both statutes eliminates any constitutional isomer of heroin from its coverage.  ECF 141 at 12, 14.  Thus, with that same limitation, the two statutes match according to the government.

This requires some unpacking.  The federal statute criminalizes heroin, including its optical isomer, "whenever the existence of such isomer . . . is possible within the specific chemical designation."  21 U.S.C. § 812(b)(10).  The Pennsylvania statute does the same with one critical difference: it criminalizes *any* isomer of heroin that "is possible within the specific chemical designation."   35 Pa. Stat. § 780-104(1)(ii).  So what is meant by "possible within the specific chemical designation?"

The government contends that a substance must be called "heroin" to be designated "heroin."  ECF 141 at 13–14.  And according to Mr. Bennett, Pennsylvania labs wouldn't call any constitutional isomer "heroin"; the labs would call such isomer by its specific name.  ECF 136 at 20.  The only substances that Pennsylvania labs would call "heroin" would be "the 16 optical isomer pairs" of heroin.  *Id.* at 26–27.  Mr. Bennett would call these substances heroin because his lab interprets Pennsylvania law to not require "a specific chiral designation" for these substances.  *Id.* at 27–28. In other words, because Pennsylvania labs don't give these substances a more specific name, the Pennsylvania labs can designate these substances as heroin.  And because

4

these substances are all optical isomers of heroin, federal law would also call them heroin.

The Court notes that, under this argument, the two statutes match only if heroin has more than one optical isomer. As the Court has found, it doesn't. But the government's argument is worth addressing further.

Only one molecule is truly "named" heroin: heroin. *Id.* at 96. The other substances that the Pennsylvania labs refer to as heroin are just "nicknames" or shorthand for otherwise complicated molecular structures. *Id.* Defining which substances are "possible within the specific chemical designation" in a federal statute based on which substances a state lab currently nicknames "heroin" is an unworkable standard. There's no limiting principle. If Pennsylvania labs were to identify heroin isomers with more specificity, that wouldn't change the meaning of the language in the federal statute.

The better read of the phrase "possible within the specific chemical designation" in this context is that an isomer must possess sufficiently similar properties to heroin to be regulated. That is, for an isomer to be covered under either statute, it must at least be an opiate like heroin. ECF 108 at 4. Unlike the term "optical isomer," the phrase "possible within the specific chemical designation [of heroin]" is not a well-defined term in chemistry. ECF 136 at 65. It's statutory language. This language is the limiting principle so that, under Pennsylvania law, all 7,452 possible isomers of heroin aren't criminalized. It's not an issue before the Court to delineate which isomers or heroin are and are not regulated under Pennsylvania law. It suffices that Pennsylvania law, by virtue of not limiting its coverage to heroin's optical isomer, is broader than the federal counterpart.

The government argues that the Court's interpretation of both statutes creates surplusage. ECF 141 at 17. Not so. The language "possible within the specific chemical designation" applies to all Schedule I drugs on the state and federal level.

*See* 21 U.S.C. § 812(b)(10); 35 Pa. Stat. § 780-104(1)(ii).  Not all scheduled drugs have an optical isomer, and the state General Assembly likely couldn't anticipate the exact number of isomers capable of mimicking similar effects to the regulated substance such that the statute intended to regulate those isomers, as well.  This language covers both concerns, and thus has meaning that isn't surplusage.

*****

In sum, the Court denies the government's motion to reconsider (ECF 113). The Court's prior order striking the ACCA enhancement from Mr. Griffey's indictment stands.  Consistent with the Court's prior order (ECF 123), the Court strikes the Section 851 information filed at ECF 118 because Mr. Griffey's Pennsylvania convictions do not qualify as "serious drug offenses."

DATED this 29th of July, 2026

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge